Good morning. May it please the Court, I'm Charles Nickel appearing for the petitioner Luis Luque-Gallegos. There are two issues in this case. The first is whether the Board of Immigration Appeals erred in failing to reopen and remand this matter to the immigration judge to provide the petitioner an opportunity to apply for adjustment of status based upon his marriage to a United States citizen. And the second is whether the BIA correctly denied reopening based on a claim of ineffective assistance of prior counsel where the counsel did not inform the petitioner of the requirements for the applications he filed with the court, did not inform and also had the court conduct the proceedings in English when the petitioner informed the court that and demonstrated that he was not proficient in English. I note for the second argument, the BIA recently held that there is no Fifth Amendment due process right for ineffective assistance of counsel in immigration proceedings. And the BIA ---- That was attorney general, wasn't it? Yeah. It's that matter of capellan. I did not see any the Ninth Circuit has not addressed this case yet. Certainly there's quite a bit of precedent from this court saying that there is a due process right to effective assistance of counsel and particularly the Fernandez v. Gonzalez case, which has it as an independent ground for reopening. However, the attorney general says it's a matter of administrative grace. So I guess they would be taking the position that this court would last jurisdiction to review a claim. But as of that, that has not been addressed. The petitioner is married to United States citizens, is statutorily eligible to adjust status based on his wife's petition. The matter of Velarde held that a motion to reopen for adjustment of status entered after the commencement of removal proceedings can be granted in discretion, notwithstanding the fact that the petition has not been adjudicated. The petition in this matter was filed June 24th, 2005. It has not been adjudicated. The file I've been able to determine is in Lee Summit, Missouri. The case, the I-130 was filed before I had the case. I just came on at the Ninth Circuit. I went down to immigration. The prior counsel had said that INS was having trouble locating the file, and then later I confirmed that they had been sent to records and had requested that it be sent back. I also had them run out a computer printout. And what they have down is a series of his renewing his employment authorization. But they don't have down, even though there's a filing receipt contained in the record, they don't have the notice for the pending I-130, and they believe that is the reason it may have been sent to storage. The question on reopening is whether what's the standard there? Is it abuse of discretion? Yes. And it sort of rises or falls based on Hawley-Luquet's affidavit, doesn't it? Yes. Under Manner of Law, you're to provide evidence of the bona fides of the marriage. Now, the BIA was the entity that made the decision not to allow reopening, correct? That's correct. And they had before it this affidavit. Right. Now, just generally, if the BIA has an affidavit before it that in some respects suggests the marriage was bona fide, but in other respects suggests that it was not, and they determined that it was not, what are we left with? Well, I don't think in this case there's anything in the affidavit which indicates that the marriage was not bona fide. We got married in part because of Luis's immigration situation as he became aware of the fact that his appeal was about to be decided, and he was advised that he did Right. And also mentions that she married one of them. What do we think of that? Well, I would say that any American citizen who marries a foreign national has got to contemplate providing that person with a spouse with an immigration benefit. It's illogical not to. I'd be very suspect of any person who is married to someone who marries someone who they know is in deportation proceedings and doesn't, you know, contemplate that it could be a factor in when they got married, and it's, I don't think it's in any way, any person would have to take that into account. It's not just, you know, suspend logic because they're getting married. It would be one thing if the affidavit simply said, I knew his immigration status when we got married. Right. I love him. We've been living together. We've been intimate, and now we're officially married. Here's the marriage certificate. Here's people who were at the wedding. That sort of thing. But she seems to say in the very first paragraph of the affidavit that a determining factor in the establishment of the marriage relationship was that not only his immigration status, but the fact that being married would help his appeal. Yes. Well, she mentions that they were together for two years. She says that, you know, I have very little to show as far as the bona fides of the I-130 was filed seven weeks later. I would note that there are a couple of visa petitions at this point that have been approved. She petitioned for his Peruvian children, and the DHS has approved both of those petitions. So she is the stepmother, and based upon her marriage to Mr. Luque, the government recognizes the marriage for that purpose. So the children have been approved and are waiting for visa processing in Lima. That's interesting. Does the approval of that application require an examination of the legitimacy of the marriage? It does not require that. And they're separate matters. He doesn't have to have an approved visa petition. They just have to show that they're married. They sent the information down to the consulate, and we have an approval on that. What is the standard? What does it actually require? I think I do get the feeling from the government's briefing that if the marriage is motivated by immigration consequences, that it can't be accepted. And if I hear you, you're saying, well, look, the question is, is the marriage a bona fide marriage? And, yeah, there may be a million reasons to get married, but if it's a bona fide marriage, then maybe it doesn't matter how many motivations there were and so on. Well, a marriage is barred under the Marriage Fraud Act, where the sole basis of the marriage is to provide an immigration benefit. Does the reg say sole purpose? What law or regulation are we working on, and what does it say? INA Section 204C says that, you know, a person where they get married in order to commit fraud on the government and to a marriage which is principally, you know, for the purpose of evading the immigration laws of the United States and obtaining status. And that is a lifetime bar, by the way, if a person is found to have committed that, even if they get married later on and are found to have a bona fide marriage to a U.S. citizen and have children, that prior fraud would bar them from further. They didn't say there was a fraud here. Fraud suggests that it's not really a marriage. It's not a bona fide marriage at all. We got married, you know, to deceive the immigration authorities, and we both went our separate ways, and that was the end of it. I mean, that I understand, but I guess I don't have the reg right in front of me right now, but I'll see what it says. I'm kind of curious to know what we're arguing about, and I'd like to know what the actual words are. Well, it has to be, you know, in order to bring an immigration benefit where the people do not intend to remain together as husband and wife. I would note that there was little evidence of the bona fides of the marriage other than that declaration, but that was, I think, quite a powerful declaration, and nobody suggests that she is other than credible. And if you look at that entire declaration and it's assumed to be credible, I don't think there's an argument to say that it was not a bona fide marriage, notwithstanding that she said, you know, he knew the appeal was coming up, and they were together, and if she was going to stay with him as husband and wife, they had to get married. I think that was reasonable on her part, and they continued married. One of the problems they have, they filed their motion to reopen, and you can only file one motion to reopen in proceedings. So as far as the information that comes along later, the government will say, like, well, you had your opportunity to file the motion to reopen. They had to do that quickly. They didn't have a lot of time. If we were to grant relief on the reopening, it would go back to BIA. Presumably the board would be advised that the records had been sent back. Yes. Would they then be retrieved and there would be a proceeding before an element of DHS? I want to have and I've requested to be sent back. And I'm also may just file another I-130, even though they have one pending, and it sometimes complicates things when you have several I-130s floating around. But in any event, the likelihood is there would then be a proceeding to determine whether the marriage was valid or not, bona fide. Yes. And if that was approved, I could move to remand based on that. And that proceeding on the bona fides of the marriage, the government would have an opportunity to present evidence to suggest that it was not bona fide, but it would be your client's burden to prove that it was. Absolutely. Okay. Absolutely. And as far as the ineffective assistance of counsel claim, I think one of the, you know, if they were not to prevail, the person, he didn't speak English well enough to conduct the hearing in English. And when it was taken on appeal, I think as far as the asylum and the cancellation application, there's an issue there regarding did he show prejudice, you know, would there have been a different outcome if he had been. But perhaps the most important application he had before the court was that of voluntary departure because he was not granted voluntary departure for lack of being informed that he had to get a current passport. And if he were to go back with an order, he's got two issues. He'd have to do a waiver for illegal presence of being here for more than a year in illegal status. That could be done. That's not the biggest hurdle. But if he has on top of that to request reentry after having been removed or, you know, stuck in order of deportation, that's a separate waiver. And he would be stuck in Lima for a very considerable amount of time. If I'm looking at the reg here, and I'm trying to make sure I understand it, it seems to have a general prohibition against approving a visa petition if there's a marriage that takes place during the proceedings. But there's a you can make a request for an exemption from that. Is that correct? Yes. It's sort of like there was a matter of Arthur that said you can't get a – because of the Marriage Fraud Act, you have to have an approved I-130 in order to reopen. And then that was modified by a matter of Velarde where they said, well, you know, these petitions can take a couple of years to get processed. If you can have a showing that it's a bona fide marriage, it's not barred on any procedural grounds. And the Petitioner should submit documents which establish that the marriage was entered into in good faith and not entered into for the purpose of procuring the alien's entry as an immigrant. That is correct. And we have what? Some statement here that she did this to help him out? Well, no. She had a five-page declaration regarding their entire relationship, how they met, the problems they had, meeting his mother, the whole thing with her prior marriage and wanting to make sure because she had a prior husband who was an alcoholic and had some reservations. You know, their whole life together. And then the fact that he had this matter coming up and that she had to act quickly because immigration doesn't recognize any kind of relationship unless you got a marriage certificate. And so she realized that that's what she had to do. But I don't think that that, you know, the fact that she took those into consideration in no way indicates that this is a marriage that's fraud or simply solely to gain an immigration benefit. So I've got my 30 seconds reserved. Yes, you've got 30 seconds. Thank you. May it please the Court, my name is Claire Workman and I represent the Attorney General of the United States who is the respondent in this case. This Court should deny the petition for review because the Board acted well within its discretion in denying Mr. Luque-Galegos' motion to reopen to apply for adjustment of status based on both DHS' opposition and Mr. Luque-Galegos' failure to prove by clear and convincing evidence that his second marriage to a U.S. citizen was bona fide. Significantly, Mr. Luque-Galegos married his second U.S. citizen wife after he had lost his case before the immigration judge and his wife filed the immigrant visa petition, the I-130, the same day the Board affirmed the judge's decision. The small amount of evidence that he submitted with his motion, including just his marriage certificate, his wife's birth certificate, the I-130 application and receipt, and the affidavits by himself and his wife are woefully insufficient to satisfy the clear and convincing standard of a bona fide marriage, to overcome the presumption that the marriage was entered into during removal proceedings, that any marriage entered into during removal proceedings is fraudulent. Likewise, the Board acted well within its discretion in denying Mr. Luque-Galegos' motion to reopen based on his ineffective assistance of counsel claim against his former attorney for two reasons. First, he did not prove that his former attorney failed to perform with sufficient competence. Second, he did not prove that he was prejudiced by his former counsel's performance. Significantly, Mr. Luque-Galegos' allegation that his due process rights were violated when his former attorney waived his right to an interpreter at his immigration hearing is meritless because the record indicates that Mr. Luque-Galegos had no problems presenting his cancellation claim and failed to prove that the absence of an interpreter prejudiced the outcome of his case, which was denied because he had failed to prove the exceptional and extremely unusual hardship to his U.S. citizen son. Mr. Luque-Galegos has not shown that there was any abuse in discretion in denying the motion because he clearly didn't meet the requirements of the Board's Valerde-Pacheco decision. His brief actually misstates one of the requirements in Valerde by saying that a motion can be granted if DHS does not oppose the motion solely based on matter of Arthur, because actually it says it may be granted if DHS either does not oppose the motion or bases its opposition solely on matter of Arthur. And here Mr. Luque-Galegos clearly did not submit the sufficient amount of evidence to meet the clear and convincing standard that his marriage was bona fide. The facts of his case are very similar to this Court's decision in Mali. As in Mali, the I-130 that had originally been filed had been revoked, and here the first I-130 filed by Mr. Luque-Galegos, his first wife, was also withdrawn, and both Mali and Luque-Galegos divorced and then remarried while their cases were before the Board. And the evidence that was deemed insufficient in Mali, the divorce decree from the first marriage, four wedding photos of the second marriage, marriage certificate, the wife's birth certificate, the receipt of the I-130 filing, the Court found that none of this fit into any of the suggested categories or the catch-all category for what you can show to prove a clear and convincing bona fide marriage. Is there a difference between what a person seeking adjustment of status must show in connection with the motion to reopen and the actual merits of a proceeding to determine bona fides? I'm not sure, Your Honor. I know that in this case that I think in both cases you have to show clear and convincing marriage if you are married during your removal proceedings. So, and in this case, he clearly didn't. It's as ---- What the Petitioner is asking for is an opportunity to demonstrate that the marriage is legitimate, correct? Correct, Your Honor. But according to the requirements of Valerde, if the I-130 is pending at the time that he files his motion to reopen, he has to show, with his motion, clear and convincing evidence. This is not a situation where the BIA says, okay, put on your case right now in front of us. That's correct, Your Honor. What logic suggests is that the Petitioner must show enough to gain the opportunity to actually have a proceeding where the bona fides or not of the marriage is established, correct? I believe so, Your Honor. But in this case, he ---- In other words, the standard to allow reopening cannot be higher or substantially higher than the requirements of proof at an actual proceeding, right? No, Your Honor. I'm sorry. The standard for a motion to reopen is abuse of discretion. So if ---- We're talking about apples and oranges. Okay. I'm trying to get to a concept here. Okay. Like in when you move to amend a civil complaint in Federal district court, you don't have to prove your case in its entirety. You simply have to show the judge, the district judge, that you have a sufficient basis to give you that opportunity. Oh, I see what you're saying, Your Honor. Is this any different than that? Yes, it is, because there are very clear guidelines. So you're saying the quantum of proof to gain reopening is exactly the same as the quantum of proof, evidence, witnesses, everything else, as it would be at the proceeding itself? I believe that it's a higher quantum of proof when you're moving to reopen your case. It's even higher than the proof you would have to establish at the hearing on the I-130 itself. I'm honestly not sure about that, Your Honor. I'm sorry. Does it say something about a prima facie case? Yes, Your Honor. You do have to ---- when you're making a motion to reopen, you do have to indicate that you would be able to make a prima facie case. All right. And that ---- but they don't resolve the credibility of your application. And if you present something and you get a supporting document that states a prima facie case, they can't say, well, we don't believe the document. That's correct, Your Honor. The credibility of the affidavits is not in question. But there is a presumption, is there not, that there's ---- that it is not valid? Yes, Your Honor. So reopening would have to be ---- whatever is submitted in the petition to reopen would have to prima facie be sufficient to overcome that. Yes, Your Honor. It is a significant burden to overcome that presumption of fraud. And in this case, the affidavit by Holly Luque-Guelegos clearly does not meet that clear and convincing standard because it's ---- it shows that she in part married him to ---- for an immigration benefit. And that's certainly not clear and convincing. The fact that they didn't submit any affidavits by third parties, even though the record indicates there are several third parties that they have in common, particularly Mr. Luque-Guelegos's sister, who his wife is good friends with, separate and apart before she even met Mr. Luque-Guelegos, who apparently does not have a good relationship with Mr. Luque-Guelegos. Even these Peruvian children that Mrs. Luque-Guelegos has now petitioned for, they could have written affidavits. The regulation suggests affidavits by third parties, not the two involved in the marriage. And this was not done here, and it's unclear why. And that just is the fact that there's such minimal evidence. Despite the fact that the marriage was in May of 2005 and the motion to reopen was filed in August of 2005, but the board's decision wasn't until six months later and there was no supplemental evidence submitted to show further proof of this marriage. With respect to the ineffective assistance of counsel claim and his original asylum claim that he had, it's clear that that was a tactical decision to withdraw the asylum application, and it was clear on the record that he voluntarily withdrew that. And there's been no indication that he has made a prima facie case for asylum or any fear that he has of going back to Peru. Do you say it's clear that the motive was tactical? Yes, Your Honor. Do we have an affidavit from the former counsel saying that? No, Your Honor. And what tells us that it was, quote, clear it was done for tactical reasons? Well, it's — Did the former counsel state on the record, I'm doing this for tactical reasons? No, Your Honor. But the fact that — Is that your supposition? What supports your statement in that regard? Okay. Well, the fact that Mr. Lugo Gallego says in his motion to reopen or in his affidavit with that motion that if the asylum application had been filed, then he would have been able to petition for review the denial of that before this Court, that assumes that he had a weak asylum claim, or not at all, really, because he assumes that it would have been denied by the immigration judge, by the board, and then he would have had to petition this Court's review. So that's one indication. And I'm sorry if I misspoke by using the word clear, but it's clear. It's a fair inference from — Yes, Your Honor. Thank you. Did he — was there a statement that, well, you don't have much of a chance of getting asylum? I believe his attorney, his former attorney, did say that to him, and he accepted that reasoning, and that's what it seems like why he voluntarily withdrew the application. What do we do about not having a passport? I mean, it does seem to me that if you're applying for voluntary departure or asking for voluntary departure, and the only reason it's denied is you don't have a passport, and he's asked why he doesn't have a passport, and he says, well, I'm not planning to go back to Peru, so I didn't think I needed to get a passport or something. Well, Your Honor — It doesn't sound like he really was advised much about why he might need a passport. That could be the case, Your Honor. He does say on the record that his attorney told him that he needed a passport, and he admits that he didn't get one, but the main issue there is that there's no prejudice from that because he is referring to the bars that apply, the 10-year bar that would apply for reentry, but that applies even if a petitioner is granted voluntary departure. So there's no prejudice, which is the key point for an ineffective assistance of counsel claim. You mean he still has a multi-year bar or something before? I'm sorry, he still — He has a multi-year reentry bar? Yes, even if granted voluntary departure, there would still be the bar in place, Your Honor. And with respect to the cancellation claim, there's clearly no prejudice there because even though it was untimely filed, the immigration judge went ahead and heard evidence on that, and that also it's important that with respect to his claim about the interpreter, it's clear from the record that he was able to present his cancellation claim. He had no problems testifying, and that when there seemed to be a nonresponsive answer, the question was rephrased until he gave one. So he does say in his affidavit that he only understood 75 percent of the hearing, the technical, legal, and immigration terms he didn't understand, but I would imagine that most people don't understand the technical or legal terms. So that's what his counsel was there for, and so he didn't show any prejudice from being able to present his cancellation claim. Thank you. Thank you. Just very briefly, he understood on the record from the court that he would have to go back to Peru in order to get a passport, and it was clear that he had not been advised of the necessity of having a passport. It makes a big difference whether he gets voluntary departure or not because if he goes back with voluntary departure, there's a waiver which he can reasonably get for the illegal presence, an I-601 waiver, which is routinely granted based upon hardship to a U.S. citizen's spouse. It's another thing to get a waiver granted where you're asking to reenter after having been deported, so that would be a significant burden on him. The opposition to the motion to reopen was based solely on the matter of Arthur. The government complained that there was not sufficient evidence of the bona fides of the marriage, and that's what matter of Arthur is all about. They say that because of the Marriage Fraud Act, if you get married after the commencement of deportation proceedings, there's not sufficient proof that the marriage is valid. As far as the children in Peru not providing declarations, well, that would certainly be hearsay evidence. They've never been to the United States. They've never had the opportunity to meet Mr. Jaliluque. They can't simply come here, and they're waiting to get their visas in order to come here that have been approved. So, you know, they certainly have no firsthand knowledge regarding the bona fides of the marriage other than the fact that their stepmother, Jaliluque, has gone ahead and petitioned them. Okay. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Canby, Hawkins